UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------- X

FINANCIAL SERVICES VEHICLE
TRUST, *by and through its servicer, BMW
Financial Services NA, LLC*,

               Plaintiff,

          -against-

KEMUEL SAMAROO,

              Defendant.

----------------------------------------X

**REPORT AND
RECOMMENDATION**
2:24-cv-04512 (FB) (JMW)

**A P P E A R A N C E S:**

    Steven Augustine Andreacchi
    **Biedermann Hoenig Semprevivo, PC**
    60 East 42nd Street, 36th Floor
    New York, NY 10165
    *Attorney for Plaintiff*

    *No Appearance for Defendant*

**WICKS,** Magistrate Judge:

    Plaintiff Financial Services Vehicle Trust ("Plaintiff"), by and through its servicer, BMW

Financial Services NA, LLC ("BMW FS"), commenced this action pursuant to the Federal

Odometer Act ("Odometer Act" or "Act"), 49 U.S.C. § 32701 *et seq*., alleging Defendant

Kemuel Samaroo ("Defendant") installed an odometer tampering device in a 2019 BMW X5

("Subject Vehicle" or "BMW") which resulted in the Subject Vehicle's depreciation in value.

(*See generally* ECF No. 2.) Before the Court on referral from the Hon. Frederic Block is

Plaintiff's motion for default judgment (ECF No. 11) against Defendant seeking a judgment

under the Odometer Act for the lost value in the Subject Vehicle in addition to attorneys' fees

and costs associated with bringing the action. *See* ECF No. 11-7; *see also* 49 U.S.C. § 32710.

1

For the reasons that follow, the undersigned respectfully recommends that Plaintiff's motion (ECF No. 11) be **GRANTED** and damages awarded as detailed below.

<u>**FACTUAL BACKGROUND**</u>

The following allegations are drawn from the Complaint. (ECF No. 2.) Plaintiff, a business trust authorized to do business in New York, acting through its servicer BMW FS,[1] brought the underlying action for Defendant's supposed violation of the Odometer Act, and for breach of contract, fraud, and trespass to chattels. (*See id.* at ¶¶ 1-3; *see also id.* at pp. 5-7.) On December 4, 2018, Defendant executed and delivered a Motor Vehicle Lease Agreement ("Lease Agreement") for Defendant's use of a 2019 BMW X5 bearing the Vehicle Identification Number ("VIN") 5UXCR6C59KLK82846 to a BMW dealership in Oyster Bay, New York ("BMW Dealership"). (*Id.* at ¶ 8.) Defendant took possession of the Subject Vehicle on the same day. (*Id.* at ¶ 9.) Plaintiff subsequently received the Lease Agreement by assignment from the BMW dealer which Plaintiff then registered with the New York State Department of Motor Vehicles. (*Id.* at ¶ 13.)

Pursuant to the Lease Agreement, Defendant would be charged $0.25 per mile driven in excess of 36,025 miles. (*Id.* at ¶ 11.) Moreover, the Lease Agreement provided that Defendant agreed to notify the dealer if the Subject Vehicle's odometer became "inoperative" or "malfunction[ed]." (*Id.* at ¶ 12.) Additionally, Defendant agreed to "not make any alterations that decrease the Vehicle' value or usefulness or that violate the law." (*Id.*) Defendant eventually surrendered the Subject Vehicle back to the BMW Dealership on August 12, 2022. (*Id.* at ¶ 21.) According to Plaintiff, the Subject Vehicle's odometer as of that date bore a reading of approximately 36,683 miles. (*Id.* at ¶ 22.) Plaintiff contends that previously, on June 28, 2022,

---

[1] BMW FS is authorized to bring this action on behalf of Plaintiff pursuant to the terms of a separate servicing agreement and power of attorney. (ECF No. 2 at ¶ 14, Ex. 1.)

Plaintiff brought the Subject Vehicle for servicing at the BMW Dealership. (*See id.* at ¶ 24.) During this inspection, the BMW Dealership ran a Carfax report[2] on the Subject Vehicle and found that during a state inspection on March 15, 2022, the odometer read 57,071 miles. (*Id.*) At the June 2022 inspection, however, the odometer read 36,100 miles. (*Id.*) Furthermore, the BMW Dealership, during the same inspection, discovered a mileage blocker installed in the Subject Vehicle. (*Id.* at ¶ 25; *see also* ECF No. 2-5.)

Consequently, Plaintiff maintains that it was unable to ascertain the correct mileage of the Subject Vehicle, and, as such, it was required to sell the vehicle as "true mileage unknown," which resulted in depreciation of Subject Vehicle's value. (*Id.* at ¶ 27.) Plaintiff, therefore, seeks judgment against Defendant on the four causes of action for the economic harm sustained as a result of Defendant's alleged conduct, in addition to treble damages, interests, and costs of the action. (*Id.* at p. 8.)

## PROCEDURAL BACKGROUND

Plaintiff initially filed the Complaint on June 27, 2024. (ECF No. 2.) Upon receiving no response from Defendant after the summons was retuned executed (ECF No. 6), Plaintiff requested a certificate of default against Defendant on October 10, 2024. (ECF No. 7.) The Clerk of the Court entered default against Defendant the next day. (ECF No. 8.) The undersigned then directed Plaintiff to either move for default in accordance with Judge Block's Individual Rules, or voluntarily dismiss the case. (Electronic Order dated October 14, 2024.) One month later, on November 13, 2024, Plaintiff filed its first motion for default judgment which Judge Block

---

[2] A Carfax report is a detailed summary of a car's history, including ownership history, title history, and mileage, that can be obtained through inputting a vehicle's VIN into the Carfax website. *See* Indy Auto Man, *What is CARFAX? Information for Buyers and Sellers*, https://www.indyautoman.com/blog/what-is-carfax.

referred to the undersigned for a Report and Recommendation. (ECF No. 9; Electronic Order dated November 14, 2024.)

Upon the undersigned's preliminary review of this motion, the Court found that Plaintiff: (i) failed to comply with the Servicemembers Civil Relief Act ("SCRA"), 50a U.S.C. § 521 pursuant to E.D.N.Y. Local Civ. R. 55.2(a)(1)(B); (ii) failed to show that it mailed all accompanying documents for the motion for default judgment to Defendant; and (iii) failed to show the basis for its requested damages pursuant to E.D.N.Y. Local Civ. R. 55.2(c). (Electronic Order dated November 18, 2024.) As such, the undersigned denied Plaintiff's motion without prejudice and with leave to renew upon properly submitting the motion in compliance with these requirements. (*Id.*) Plaintiff has since filed an amended motion inclusive of the missing documents. (ECF Nos. 11-12.) Judge Block referred Plaintiff's renewed motion to the undersigned to issue a Report and Recommendation. (Electronic Order dated November 22, 2024.) To date, Defendant has not appeared.

In its motion, Plaintiff requests entry of default judgment in its favor against Defendant for his alleged violation of the Odometer Act in the sum of $19,819.09, a figure comprised of: (i) treble damages in the amount of $13,175.43 representing three times the actual damages Plaintiff sustained—$4,391.81,[3] and (ii) attorneys' fees and costs in the amount of $6,634.66.[4] (*See* ECF No. 11-7; *see also* ECF No. 11-8.) The damages sought in Plaintiff's motion for default

---

[3] 49 U.S.C. § 32710(a) provides that "[a] person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $10,000, whichever is greater."

[4] 49 U.S.C. § 32710(b) provides, in relevant part, that "[a] person may bring a civil action to enforce a claim under this section in an appropriate United States district court . . . The court shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person."

judgment are damages awarded under the Federal Odometer Act. (*See* ECF No. 11-7.) In order to be entitled to such damages, Plaintiff must prove Defendant's liability under the Odometer Act.

## THE LEGAL FRAMEWORK

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, as here, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.1(b) and 55.2. After the Clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2. The decision to grant a motion for default is left to the discretion of the district court. *United States v. Dougherty*, No. 15-cv-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016). Given that the Clerk has already entered default against Defendant (ECF No. 8), the Court is primarily concerned with Plaintiff's compliance with E.D.N.Y. Local R. 55.2.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-cv-1878 (RJD) (JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true). The Court must therefore ensure: (i) Plaintiff satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; and (ii) Plaintiff's allegations, when accepted as true, establish liability as a matter of law. *See Finkel*, 577 F.3d at 84.

5

## DISCUSSION

### I.    Procedural Compliance

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion.  E.D.N.Y. Local R. 7.1(a)(1) - (3).  Local Civil Rule 55.2 requires that a party moving for default judgment append to its application an affidavit or declaration demonstrating that (A) the Clerk has entered default against the Defendant, (B) the movant has complied with the SCRA, and (C) that the defendant is not a minor or incompetent person, as well as all papers required by E.D.N.Y. Local R. 7.1 (*supra*), and a proposed judgment and certificate of service that all documents in connection with the motion for default judgment has been personally served on or mailed to the defendant's residence or business address.  E.D.N.Y. Local R. 55.2(a)(1)—(3).  Recently added under the Local Rules, is that the moving party "must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs."  E.D.N.Y. Local R. 55.2(c).

With respect to the non-military affidavit, before a default judgment can be entered for the plaintiff, the SCRA commands that the Court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. App. § 521; *see also ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the

default judgment is to be entered." *Apex Mar. Co. v. Furniture, Inc*., No. 11-CV-5465 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012).

Here, Plaintiff submitted an exhibit of the SCRA Affidavit of Non-Military Service for Defendant (ECF No. 11-4) and the affidavit of Steven A. Andreacchi who conducted a search of the Department of Defense Manpower Data Center which revealed that Defendant is not a member of the military. (ECF No. 11-3 at ¶ 16.) These efforts comply with the SCRA. *See McLaugulin v. Onanafe Management Solutions LLC*, No, 22-CV-6792 (PKC) (MMH), 2024 WL 4184485, at *6 (E.D.N.Y. Sept. 14, 2024) (noting the SCRA requirement is complied with where plaintiff files a declaration stating that an individual defaulting defendant was not a member of the military after performing a search of the Department of Defense database).

Additionally, Plaintiff's motion further complies with Local Rule 7.1 and Local Rule 55.2(a)(2) because it includes (1) a notice of motion (ECF No. 11 at p. 1); (2) a memorandum of law (ECF No. 11-5); (3) affidavits and exhibits to support Plaintiff's contentions (*see* ECF Nos. 11-1; 11-2; 11-3; 11-4); and (4) a proposed order detailing the proposed judgment. (ECF No. 11-8.) The motion further complies with Local Rule 55, as Plaintiff properly attached and submitted a declaration affirming that the Certificate of Default was entered by the Court on October 11, 2024 (ECF No. 11-4 at p. 31) and a declaration that Defendant was not a minor or incompetent person. (ECF No. 11-3 at p. 3, ¶ 17.) Plaintiff also filed an affidavit of service of the requisite documents on Defendant via first class mail. (ECF No. 11-9.) Accordingly, the undersigned finds that Plaintiff's Motion for Default Judgment is procedurally proper and now turns to the merits of the Motion.

## II.    <u>Applying the Default Factors</u>

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied.  *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). Consideration of these three factors leads to a recommendation that an entry of default judgment is appropriate where, as here, Defendant has wholly failed to appear and present any defense, and Plaintiff is left with no further steps to take to secure relief.  *ADI Glob. Distribution*, 2023 WL 3355049, at *4.

## III.    <u>Jurisdiction</u>

### A.  Personal Jurisdiction

When a defendant fails to appear, "before a court grants a motion for default judgment it may first assure itself that it has personal jurisdiction over the defendant."  *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  Since a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "'preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment.'"  *ADI Glob. Distribution*, 2023 WL 3355049, at *3 (citation omitted).  Here, a sua sponte assessment of personal jurisdiction is appropriate because the Defendant has failed to appear in this action. *Id.*

For a court to exercise personal jurisdiction: (i) a plaintiff must complete proper service of process, (ii) there must be a statutory basis for personal jurisdiction that renders such service

8

of process effective, and (iii) the exercise of personal jurisdiction must comport with constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673. F.3d 50, 60–61 (2d Cir. 2012).

Rule 4(c) requires that a summons must be served with a copy of the Complaint and by a person who is at least 18 years old and not a party to the case. *See* Fed. R. Civ. P. 4(c). Additionally, Rule 4(e)(1) permits service on individuals to be made "pursuant to the law of the state in which the district court is located. Under New York law, personal service may be effected on an individual by 'delivering the summons within the state to a person of suitable age and discretion at the [person's] actual place of business, dwelling place of usual place of abode of the person to be served . . . .". N.Y. C.P.L.R. § 308(2). Here, Defendant was served on July 22, 2024, when a process server delivered the Summons and Complaint to a person of "suitable age and discretion," specifically Defendant's family member and stated she was authorized to accept service. (*See* ECF No. 6.)

Additionally, Plaintiff brought the underlying action under the Federal Odometer Act, thus the Court has subject matter jurisdiction under federal question jurisdiction. *See* 28 U.S.C. § 1331; *see also* 49 U.S.C. § 32701. In cases arising under federal question jurisdiction, where, like here, the statutes conferring jurisdiction do not contemplate nationwide service of process, personal jurisdiction is determined by the law of the state in which the district court sits.  *See Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 277 (S.D.N.Y. 2019).  Thus, the Court first looks to New York law for the purpose of determining personal jurisdiction over Defendant in New York. Then, the Court evaluates whether the "exercise of jurisdiction under state law satisfies federal due process requirements of 'fair play and substantial justice.'" *Mortg. Funding Corp. v. Boyer Lake Pointe, LLC*, 379 F. Supp. 2d 282, 286 (E.D.N.Y. 2005) (quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  Under New York law there are two routes for a court to exercise personal jurisdiction.  The Court considers each in turn below.

### i. General Jurisdiction

To analyze whether a court has general jurisdiction over an individual, the "paradigm forum" is the individual's domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Similarly, "[f]or general jurisdiction over an individual to comport with due process, Defendants must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction." *Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014). Here, though Plaintiff asserts that Defendant "is a resident of the State of New York" and is "residing at 121 Bucknell Rd, Valley Stream, NY 11580-5329," residency alone is insufficient to prove a person's domicile. (*See* ECF No. 2 at ¶¶ 4-5); *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." (internal citations omitted)); *see also Molokotos-Liederman v. Molokotos*, No. 23 Civ. 1654 (VM), 2023 WL 5977655, at *6 (S.D.N.Y. Sept. 14, 2023) ("[A]s courts have remarked, physical residence alone is not sufficient to ascertain a party's domicile for the purposes of establishing . . . subject matter jurisdiction.").

Defendant was not personally served while in New York. Though service was properly effectuated by delivering a copy of the Summons and Complaint to a person of suitable age and discretion, this does not confer general jurisdiction over a defendant. *See Owens v. Ronemus*, No. 23 Civ. 3036 (PGG), 2024 WL 3105605, at *4 (S.D.N.Y. June 24, 2024) (emphasizing that a defendant must be served while physically present within New York to confer general jurisdiction over him, and noting the extreme absence of case law supporting a finding of general jurisdiction over an individual based on effectuating "suitable age and discretion" service under

10

C.P.L.R. § 308(2)).  Moreover, nothing in the record indicates Defendant consented to jurisdiction in New York. Accordingly, since the Court does not have general jurisdiction over Defendant, the Court now considers whether there is specific jurisdiction under New York's long-arm statute.

### ii.  Specific Jurisdiction

Pursuant to New York's long-arm statute, CPLR 302(a), a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," as long as the Plaintiff's "cause of action aris[es] from" that "transact[ion]." CPLR 302(a).  This is known as specific jurisdiction and sometimes referred to as long-arm jurisdiction.  To exercise specific jurisdiction through New York's long-arm statute, "two requirements must be met: (1) The defendant must have transacted business within the state[5]; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citation omitted). "Section 302(a) also requires that the claims asserted 'aris[e] from any of the acts' that provide the basis for exercising jurisdiction." *Sea Tow Servs. Int'l, Inc v. Pontin.*, 472 F. Supp. 2d 349, 360 (E.D.N.Y. 2007) (quoting CPLR 302(a)).  "[A] claim 'aris[es] from' a particular transaction

---

[5] "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006). Courts consider the following factors:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward, Inc.*, 362 F.3d 17 at 22 (quotations omitted) (internal citations omitted).

when there is 'some articulable nexus between the business transacted and the cause of action sued upon.'" *Id.* (quoting *Sole Resort*, 450 F.3d at 103).

Here, Defendant "executed and delivered" the Lease Agreement to the BMW Dealership in Oyster Bay, New York and Defendant took possession of the vehicle at the BMW Dealership. (ECF No. 2 at ¶¶ 8-9.) Moreover, the transaction underlying this lawsuit—the lease of the BMW on December 4, 2018—took place in New York. (*See* ECF No. 2-3, Ex. 1.) Additionally, Defendant returned the BMW bearing the allegedly fraudulent odometer to the same dealership in New York. (*See* ECF No. 2 at ¶ 22.) Indeed, the inspection of the Vehicle and subsequent discovery of the odometer tampering device all took place in New York. (*See id.* at ¶¶ 23-26.)

"The exercise of long arm jurisdiction over Defendants by a New York court must also satisfy constitutional due process standards." *Id.*  To satisfy the requirements of due process, the defendant's activities in New York must constitute "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum States, thus invoking the benefits and the protection of its laws." *NW Direct Design & Mfg., Inc. v. Glob. Brand Mktg., Inc.,* No. 98-cv-4756 (LAP), 1999 WL 493348, at *3 (S.D.N.Y. July 12, 1999) (quoting *Burger King*, 471 U.S. at 475).  This involves a two-fold inquiry: (1) "minimum contacts," and (2) "reasonableness."  *Sea Tow Servs. Int'l*, 472 F. Supp. 2d at 360.

*First*, the Court is satisfied that Plaintiff's claims arise out of Defendant's contacts with New York and support specific jurisdiction because this lawsuit stems from the very business transaction Defendant was a part of.

*Second*, the exercise of specific jurisdiction over Defendant is reasonable.  The factors supporting this conclusion include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining

12

convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id*. (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Calif., Solano Cty.*, 480 U.S. 102, 113 (1987)).

These circumstances demonstrate that it is reasonable for Defendant to anticipate being sued here to adjudicate matters pertaining to, and arising from actions within, the Subject Vehicle. *See Licci*, 732 F.3d at 170 ("It would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have "purposefully availed itself of the privilege of doing business in the forum and [to have been able to] foresee being haled into court there."). The Court finds the remaining factors to be neutral, and given the Defendant's default, it has not been provided, nor does it find, any reason why exercise of specific jurisdiction over Defendant would be unreasonable. Accordingly, the Court has specific personal jurisdiction over Defendant.

## IV.   Liability

When a defendant defaults, the court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Finkel*, 577 F.3d at 84.  A defendant's default is considered an admission of all of well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.

### A.  Statute of Limitations

Before addressing the merits of Plaintiff's claims, the Court must first satisfy itself that Plaintiff has brought them in a timely manner. An action for violation of the Odometer Act "must be brought not later than 2 years after the claim accrues." 49 U.S.C. § 32710(b). A claim

accrues when a "plaintiff discovers, or a reasonably diligent plaintiff would have discovered, the facts constituting the violation." *Henley v. Neessen Chevrolet, Inc.*, No. 24-cv-00195, 2024 WL 4202716, at *7 (D. Minn. Sept. 16, 2024). Here, Plaintiff discovered the odometer tampering device—the fact constituting the alleged violation of the Act—on June 28, 2022. (*See* ECF No. 11-1, Morrison Decl. at ¶ 5.) Thus, because Plaintiff commenced this action on June 26, 2024, it did so within the applicable statute of limitations period.

### B. Federal Odometer Act

Plaintiff avers Defendant violated the Odometer Act by installing an odometer tampering device to reflect fewer miles than the subject vehicle had actually traveled. (ECF No. 11-5 at p. 3.) To state a private right of action under the Odometer Act, a plaintiff must prove: (1) a violation of the Act; and (2) that violation was committed with an intent to defraud. *Holder v. Statement Auto Sales*, No. 19 CV 1159 (MKB) (RML), 2020 WL 1087278, at *3 (E.D.N.Y. Feb. 18, 2020), *report and recommendation adopted*, 2020 WL 1083634 (E.D.N.Y. Mar. 6, 2020).

#### i. *A Violation of the Federal Odometer Act*

Plaintiff first contends that Defendant violated § 32703 of the Odometer Act—commonly referred to as the "anti-tampering provision"—by "altering or causing to be altered [the Subject Vehicle's] odometer with the intent to change the number of miles indicated thereon." (ECF No. 2 at ¶ 31); *Holder*, 2020 WL 1087278, at *3. Pursuant to the anti-tampering provision, "[a] person may not disconnect, reset, alter, or have disconnected, reset, or altered an odometer of a motor vehicle intending to change the mileage registered by the odometer." 49 U.S.C. § 32703(2). Here, an odometer tampering device was allegedly placed in the BMW and subsequently discovered during a routine checkup of the vehicle on June 28, 2022.[6] (*See* ECF

---

[6] Plaintiff submits three color photographs of the tampering device within the Subject Vehicle. (*See* ECF No. 11-1, Morrison Decl., Ex. C.)

No. 11-1, Morrison Decl. at ¶ 5.) Specifically, Plaintiff argues that the Carfax report indicated that a state inspection was performed on the vehicle on March 15, 2022, and at that time the odometer read 57,071 miles. (ECF No. 2 at ¶ 24.) On the date the vehicle was returned, however, the odometer read 36,683 miles. (*Id.* at ¶ 22.) These circumstances, according to Plaintiff, amount to "clear evidence" that the vehicle was tampered with. (*Id.* at ¶ 23.)

Additionally, Plaintiff maintains that Defendant violated § 32705 of the Odometer Act—commonly referred to as the "disclosure provision"—by "failing to provide accurate disclosures to Plaintiff . . . at the time of the repossession of the Subject Vehicle." (*Id.* at ¶ 32). "The disclosure provision requires a person transferring ownership of a motor vehicle to provide the transferee with written notice of the cumulative mileage registered on the odometer or, if the transferor knows that the odometer reading is different from the vehicle's actual mileage, disclosure that the actual mileage is unknown." *Holder*, 2020 WL 1087278, at *3. Relatedly, pursuant to 49 C.F.R. § 580.5(c), a transferor of a motor vehicle must disclose the mileage to the transferee in writing on the title. "This written disclosure, which must be signed by the transferor, must also contain the date of the transfer, the transferor's and transferee's names and current addresses, as well as the identity of the vehicle, including its make, model year, body type, and the vehicle identification number." *Enobakhare v. Carpoint, LLC*, No. 08 CV 4798 (ARR), 2011 WL 703920, at *7 (E.D.N.Y. Jan. 10, 2011), *report and recommendation adopted*, 2011 WL 704902 (E.D.N.Y. Feb. 16, 2011) (citing 49 C.F.R. § 580.5(c)). Additionally, the transferee is required to sign the disclosure statement, print his name, and return a copy to the transferor. 49 C.F.R. § 580.5(f).

Failure to comply with these disclosure requirements, or absence of proof indicating compliance, will result in a defendant being held liability under § 32705. *See Powell v. Manny*,

No. 3:96-CV-1703, 1997 WL 135900, at *2 (E.D.N.Y. Mar. 13, 1997) ("[Section] 32705 was violated since no disclosure was made to the plaintiff."); *see also Enobakhare*, 2011 WL 702920, at *6–7 (concluding plaintiff satisfied the first element in proving a violation of § 32705 by stating defendant failed to provide the title certificate and failed to obtain plaintiff's signature).

The circumstances presented here are indistinguishable to those in *Financial Services Vehicle Trust by and through BMW Financial Services NA, LLC v. Keitt*, where the court granted plaintiff's motion for default judgment against defendant for violations of § 32703 and § 32705. No. 2:23-cv-23188 (KSH) (AME), 2025 WL 670014, at *3 (D. N.J. Mar. 3, 2025). There, within the executed lease for a BMW, defendant agreed to not make alterations to decrease the vehicle's value including alterations to the odometer. *Id.* at *3 (citing Complaint at ¶¶ 12, Ex. 1, Lease Agreement.) When defendant returned the vehicle to the dealership, however, "a mileage blocking device was plugged into the instrument cluster." *Id.* at *1 (citing Complaint at ¶¶ 17-18). As a result of the odometer tampering device, plaintiff was forced to brand the car as "true mileage unknown" which resulted in the car's depreciation. *Id.* In granting default in favor of plaintiff, the court determined that "[a]ccepting plaintiff's allegations as true, defendant . . . violated § 32703 by returning the car to [the BMW Dealership] with a mileage blocking device plugged into the instrument cluster, which acts to prevent accurate odometer readings." *Id.* at *3. Additionally, the court held that because defendant did not disclose that the odometer was inoperable at the time he returned it to the dealership, he violated § 32705. *Id.*

The Court need not look further than to our sister state's decision in *Keitt* for determining that the presence of the odometer tampering device found in the Subject Vehicle, coupled with the lack of evidence demonstrating that Defendant complied with the necessary disclosure requirements, warrants a conclusion that Defendant violated § 32703 and § 32705. Accordingly,

the undersigned recommends finding that Plaintiff has established Defendant's liability under the Federal Odometer Act.

ii.    *Intent to Defraud*

Once a plaintiff proves that the Odometer Act was violated, a plaintiff must then prove the defendant acted with an "intent to defraud," an "essential element of *each* of [a] plaintiff's Federal Odometer claims." *Holder*, 2020 WL 1087278, at *4 (finding plaintiff was required to prove an intent to defraud with respect to its claims under, *inter alia*, § 32703 and § 32705) (emphasis added). An intent to defraud can be based on either actual intent or gross negligence or recklessness. *Harris v. Jamaica Auto Repair, Inc.*, No. 03-cv-417, 2007 WL 4380280, at * 3 (E.D.N.Y. Dec. 13, 2007). This intent is required with respect to the subject vehicle's mileage, not with respect to any possible aspect of the sale of the vehicle. *Locascio v. Imports Unlimited, Inc.*, 309 F. Supp. 2d 267, 270 (D. Conn. 2004) (emphasizing that requiring the intent to defraud element to pertain to the mileage complies with Congress' intent in passing the Odometer Act).

Here, Plaintiff avers that Defendant's violations of the Odometer Act were made "with the intent to defraud." (*Id.* at ¶ 33.) Specifically, Plaintiff submits that Defendant surrendered the Subject Vehicle knowing that the odometer reading was inaccurate, that Defendant "intentionally withheld such information from Plaintiff as to the Subject Vehicle's true odometer reading in order to avoid paying Plaintiff excess mileage fees owed in accordance with the Lease Agreement," and Plaintiff justifiably and reasonably relied on these misrepresentations and omissions as to the true mileage of the Subject Vehicle to its detriment. (ECF No. 2 at ¶¶ 43-45.) Indeed, Plaintiff argues that the intent to defraud "can be inferred" from Defendant's "reckless disregard of the law and Plaintiff's actual knowledge of odometer tampering." (*See* ECF No. 11-5 at p. 4.)

17

The Court, again, finds guidance in *Keitt* where the court determined that statements strikingly similar to these sufficed at the default judgment stage for proving an intent to defraud. *Keitt*, 2025 WL 670014, at *4. Specifically, there, "[p]laintiff submit[ted] that defendant acted with intent to defraud by tampering with the car's odometer and returning the car without disclosing that the odometer reading was inaccurate. Plaintiff theorize[d] that defendant intentionally withheld such information to avoid paying excess mileage fees that would have been owed under the lease agreement." *Id.* Moreover, due to the odometer blocking device, the true mileage was unknown and was sold as true mileage unknown. *Id.* These statements mirror the assertions Plaintiff makes in the current action, and thus the undersigned respectfully recommends a finding that Plaintiff has proved an intent to defraud under the Odometer Act.

## V.    Damages

Where liability for default is established, the Court must next analyze whether an award of damages is warranted. A party's default constitutes a concession of all well pleaded allegations, however, such default "is not considered an admission of damages." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 271 (E.D.N.Y. 2019) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)). The Court must be satisfied that "Plaintiff has met the burden of proving damages to the Court with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020). A plaintiff ordinarily satisfies this burden by submitting "documentary evidence or detailed affidavits to support their damages claim." *Keybank N.A. v. Nour Limo, Inc.*, 345 F.R.D. 555, 563 (E.D.N.Y. 2024).

Under the Federal Odometer Act, if judgment is entered in the plaintiff's favor, "[t]he court shall award costs and a reasonable attorney's fee." 49 U.S.C. § 32710(b). If the defendant acts "with intent to defraud," the defendant "is liable for 3 times the actual damages or $10,000, whichever is greater." 49 U.S.C. § 32710(a); *see Harper v. Kensington Family Auto Center, LLC*, No. 3:23-cv-01250 (SVN), 2024 WL 33442307, at *3 (D. Conn. June 10, 2024). A failure to prove liability under the Federal Odometer Act, however, precludes an award of damages to a plaintiff. *See Badu*, 2015 WL 10458899, at *5.

Here, Plaintiff requests that a judgment be entered against Defendant for $19,810.09. (*See* ECF No. 11-8; ECF No. 11-5 at p. 5.) This figure represents trebled actual damages of $13,175.43—the byproduct of multiplying the amount of actual damages[7] times three—in addition to reasonable attorneys' fees and costs of $6,634.66. (*See* ECF No. 11-7.)

     i.    *Actual Damages*

Actual damages in the Federal Odometer Act context are ordinarily comprised of "the difference in price between what the plaintiff actually paid for the vehicle and the actual fair market value of the vehicle based on its accurate mileage, plus any expenses shown to be attributable to the wrongful acts of the defendant." *Rios v. Winners Auto Sale, LLC*, No. 23-1140, 2024 WL 3424081, at *1 (D. Md. July 16, 2024) (internal citation and quotations omitted). To support the requested actual damages award, Plaintiff submits true copies of invoices reflecting $725.00 in repossession costs and $1,266.81 in auction fees. (*See* ECF No. 12, Morrison Decl. at ¶ 10, Ex. E.) Additionally, Plaintiff submits a Bill of Sale of the Subject Vehicle which demonstrates the Vehicle was sold for $24,500.00 whereas the adjusted MMR[8] at the time of the

---

[7] Plaintiff avers that it incurred $4,391.81 in damages, a figure representing the sum of: (i) $2,400.00, the difference between what the BMW was sold for ($24,500.00) and the vehicle's adjusted MMR at the time of sale ($26,900.00); (ii) $1,266.81 in auction fees; and (iii) $725.00 in repossession fees. (*Id.* at ¶¶ 9-10.)

[8] Manheim Market Value (MMR

sale was $26,900.00, thereby resulting in a loss of $2,400. (*See* ECF No. 12, Morrison Decl. at ¶ 9, Exs. D, E.) Proof of this nature suffices for awarding actual damages under the Odometer Act. *See Keitt*, 2025 WL 670014, at *4 (noting that plaintiff "adequately demonstrated" that it was entitled to actual damages where it proved it sold the vehicle at a specified loss due to the odometer tampering device as illustrated by the "Morrison Declaration" coupled with a Bill of Sale showing the vehicle's adjusted MMR value on the date of the sale). Pursuant to § 32710(a), therefore, the undersigned recommends awarding Plaintiff $13,175.43 in actual damages.

ii.    *Attorneys' Fees*

To determine the reasonableness of an attorneys' fee award, "courts in the Second Circuit multiply the reasonable hourly rate by the number of hours reasonably expended by counsel," commonly referred to as the lodestar approach. *Ritchie v. Gano*, 756 F. Supp. 2d 581, 583 (S.D.N.Y. 2010) (referencing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Board of Elections*, 522 F.3d 182, 183–84 (2d Cir. 2008)). "A party seeking an award of attorney's fees bears the burden to document 'the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done.'" *Bds. Trs. Ins., Annuity, Scholarship, & Apprenticeship Training Funds Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Liberty Signs, Inc.*, No. 10-cv-1737 (ADS) (AKT), 2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4373893 (E.D.N.Y. Sept. 19, 2011).

Here, Plaintiff submits a declaration from its attorney, Steven A. Andreacchi, and an itemized billing chart describing the tasks that Andreacchi's firm worked on, establishing the attorneys' hourly rates, and noting the hours billed. (*See* ECF No. 11-6.) Andreacchi avers that

20

from January 9, 2024 to June 26, 2024, his firm worked primarily on case intake and pre-litigation settlement efforts. (*Id.* at ¶ 5.) From June 26, 2024 to November 13, 2024, his firm worked on matters pertaining to bringing this action and the current default motion. (*Id.* at ¶ 6.) As demonstrated in the itemized invoice, his firm billed 25.90 hours. (*Id.* at ¶ 7; *see also id.* at pp. 4-5.) These hours were split amongst Andreacchi, a shareholder at the firm who has been practicing over twelve years and who bills at a rate of $275.00 to $300.00 per hour, and Christopher B. de Bank, an associate who has been practicing for six years, who bills at an hourly rate of $210.00 to $225.00. (*See id.* at ¶¶ 7-9.) The invoice also demonstrates that $607.16 was spent in costs to commence the action. (*See id.* at p. 5.)

Indeed, for default judgment cases within the Federal Odometer Act context, the fees and costs fall well within the bounds of reasonableness. *See Moxey v. Jimmy Auto Sale LLC*, No. 17-cv-04731, 2019 WL 1399556, at *6 (D. N.J. Mar. 28, 2019) (awarding attorney's fees and costs in a default judgment case under § 32710(b), and finding hourly rates ranging between $210 and $475 reasonable, where affidavits and invoices demonstrated that two attorneys spent a total of 41.5 hours on the case, mainly reviewing files, corresponding with counsel, and drafting pleadings and the default judgment motion); *see also Hand v. Wholesale Auto Shop, LLC*, No. 1:18-cv-00027, 2018 WL 4291792, at *3 (E.D. Tenn. Aug. 22, 2018) (analyzing the submitted affidavits and invoices which supported a finding that the requested fees were reasonable under § 32710 at the default judgment stage), *report and recommendation adopted*, 2018 WL 4289608 (E.D. Tenn. Sept. 7, 2018). Accordingly, considering these attorneys' hourly billing rate in light of their experience and skill, the nature of the case, and the services rendered, the undersigned recommends awarding Plaintiff attorneys' fees and costs in the amount of $6,634.66.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's motion for default judgment (ECF No. 11) be **GRANTED** and that Plaintiff be awarded **$19,810.09** comprising of actual damages in the amount of $13,175.43 and reasonable attorneys' fees and costs totaling $6,634.66.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Plaintiff. Plaintiff is directed to serve a copy of this Report and Recommendation on Defendant via first-class mail and via email and promptly file proof of service on ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further

judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan &*

*Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
April 21, 2025

RESPECTFULLY RECOMMENDED,

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

23